CITY OF NEWMAN GROVE, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. DALE R. PRIMROSE AND ALICE H. PRIMROSE, APPELLEES.

480 N.W.2d 408

Filed February 28, 1992.    No. S-89-734.

James F. Brogan for appellant.

Milo Alexander for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

At the close of the plaintiff's evidence, the trial court directed a verdict against the plaintiff, City of Newman Grove (City), and dismissed its petition to enjoin Dale R. and Alice H.

Primrose from violating ordinances prohibiting storage of "junk" motor vehicles on their residentially zoned property. The City appeals.

In order to sustain a motion for a directed verdict . . . the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991).

Because we find that the City's evidence establishes a prima facie case that an ordinance was violated, we reverse the decision of the district court for Madison County and remand the cause for a new trial.

An action for an injunction sounds in equity. *Kaiser v. Western R/C Flyers*, 239 Neb. 624, 477 N.W.2d 557 (1991).

> In all appeals from the district court in suits in equity in which review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the Court of Appeals or the Supreme Court to retry the issue or issues of fact involved in the finding or findings of fact complained of upon the evidence preserved in the bill of exceptions and, upon trial de novo of such question or questions of fact, reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof.

Neb. Rev. Stat. § 25-1925 (Supp. 1991).

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Baker v. St. Paul Fire & Marine Ins. Co., ante* p. 14, 480 N.W.2d 192 (1992).

The record reflects that the Primroses owned residential property, zoned R-2 for single-family dwellings, in Newman Grove. Since at least January 1984, the Primroses have stored a number of vehicles in their yard. In March 1988, the City filed an amended petition in the district court, which alleged, in part, violations by the Primroses of its ordinances regarding property zoned R-2 in that "the defendants continuously and habitually keep and store upon said premises, other than in an

enclosed building, unlicensed and inoperable motor vehicles." The City asked that the Primroses "be permanently enjoined from storing junk, unlicensed, and inoperable vehicles, and vehicle parts" upon their property, other than storage within an enclosed building.

Relevant portions of the zoning ordinances were received into evidence and made a part of the record. Section 5 of the Supplementary District Regulations in the R-2 zoning ordinance provides that:

> 1. It is the intent of this regulation to prevent the repair, remodel, assembly, disassembly or storage or standing of any inoperable vehicle other than in an enclosed garage other than in a district permitting and regulating such occurrence.
>
> 2. A motor vehicle shall be determined as inoperable when it does not have a current state license plate or when it has a current state license plate, but is disassembled or wrecked in part or whole and is unable to move under its own power.
>
> 3. Inoperable vehicles may be stored or may stand only in a legally conforming auto wrecking yard or in a fully enclosed storage structure in any District of these regulations where inside storage is permitted.

The uses listed in subsection 1 are not permitted in an R-2 district.

The City also alleged violations of two additional ordinances which were admitted into evidence but were not made a part of the record. Therefore, those ordinances are not before this court.

The evidence reflects that the City's zoning administrator made 8 to 10 inspections of the Primrose property from June 1985 to the time of trial, in May 1989. He testified that during those 8 to 10 inspections, he observed "parts of vehicles stored on the property, disassembled vehicles, vehicles that appeared to not have a current license plate." The observations were made from an alley and a street adjacent to the Primrose property. In the course of his inspections, the zoning administrator took a number of photographs of the Primrose property. The photographs were admitted into evidence. The

administrator testified that Dale Primrose met with him in September 1985, at which time they discussed the problem of inoperable vehicles on the Primrose property. The administrator testified that during the meeting, Primrose's primary concern was that there were others in town who also stored old vehicles. During the conversation, Primrose indicated that the vehicles appreciate in value and that if stored elsewhere, they become damaged by people jumping on them. The zoning administrator did not know how many of the vehicles stored on the Primrose property were unlicensed or how many, if any, were not in running condition.

The City's police chief testified that he regularly observed the Primrose property from October 1988 to May 1989. He said there were always eight or nine unlicensed vehicles on the property. He also testified that there were times when some of the vehicles had no motors in them. The chief was uncertain if the motor vehicles were in running condition on the date of trial.

As summarized, the City asserts that the district court erred in (1) dismissing the case, after the City adduced the foregoing evidence; (2) overruling its motion for a new trial; and (3) finding there was insufficient evidence that the Primroses were in violation of city ordinances prohibiting storage of "junk" motor vehicles.

The City's zoning ordinances prohibit, among other things, the storage of inoperable motor vehicles which *either* (1) do not have a current state license plate *or* (2) have a current state license plate, but are disassembled or wrecked and are unable to move under their own power. The amended petition alleged that the Primroses keep and store on their premises "unlicensed and inoperable motor vehicles." We do not interpret this language as alleging that the vehicles are both unlicensed and inoperable, as is urged by the Primroses, but, rather, that the Primroses keep and store on their property motor vehicles which are unlicensed and that they keep and store on their property motor vehicles which are inoperable.

There was testimony that at various times there were unlicensed cars and cars without motors on the Primrose property. It is also clear from the photographs taken between

1985 and 1989 which were received in evidence that the Primroses had on their premises vehicles which did not display a current license plate, vehicles which were filled with boxes and other materials for months or years at a time, and parts of vehicles and vehicle motors sitting outdoors. None of these were stored in an enclosed storage structure, as required by the zoning ordinances.

Upon our de novo review of the record, we find that the City of Newman Grove adduced sufficient evidence under the law and the facts to establish a prima facie case that the Primroses flagrantly and continuously violated its ordinances by illegally storing both unlicensed motor vehicles and inoperable motor vehicles on their residential property and that the trial court erred in directing a verdict and dismissing the case.

The decision of the district court for Madison County is reversed, and the cause is remanded for a new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.