BARBARA A. BAUER, INDIVIDUALLY AS A TAXPAYER AND ON BEHALF
OF ALL PEOPLE SIMILARLY SITUATED, APPELLEE, V. LANCASTER
COUNTY SCHOOL DISTRICT 001, ALSO KNOWN AS LINCOLN PUBLIC
SCHOOLS, ET AL., APPELLANTS.

501 N.W.2d 707

Filed June 18, 1993.   No. S-91-300.

Edwin C. Perry, of Perry, Guthery, Haase & Gessford, P.C., and William F. Austin, Lincoln City Attorney, and Dana W. Roper for appellants.

Miles W. Johnston, Sr., and Miles W. Johnston, Jr., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

The appellants claim that the trial court erred in finding that the City of Lincoln does not own Cooper Park and therefore

had no authority to enter into an agreement with the Lincoln Public Schools for use of the parkland.

We reverse the order of the district court for Lancaster County and remand the cause with directions to dismiss the plaintiff-appellee's petition.

## FACTS

On June 1, 1989, the City of Lincoln (City) and Lancaster County School District 001 (Lincoln Public Schools, hereinafter LPS) entered into an agreement entitled "Park School Common Facility Agreement." The agreement provided for LPS and the City to "jointly construct, remodel and operate a recreational facility on certain School District and City property, including a portion of Cooper Park."

When the changes in the park were undertaken, Barbara A. Bauer, along with two other plaintiffs (who were subsequently dismissed from this lawsuit and who are no longer parties to this action), filed a petition in the district court alleging that the renovation had destroyed the unique configuration of Cooper Park through demolition of buildings, limestone walls of historical value, and approximately 100 trees. Alleging the agreement was unlawful because the City did not own Cooper Park, Bauer sought to enjoin the defendants from "taking any action in further performance of the objectives" of the agreement. Named defendants in the lawsuit were the City; its mayor, Bill Harris; LPS; and LPS' board president, James Wickless.

The parties stipulated that Bauer is a citizen of the City of Lincoln, that she is a taxpayer, and that she lives approximately 2 miles from Cooper Park.

Following trial, the district court entered an order holding that the City had title to Cooper Park and that the agreement between the City and LPS was valid. The court denied Bauer's request for injunctive relief and dismissed the suit. Bauer filed a motion for new trial. Following arguments on the motion, the district court sustained the motion and entered judgment in favor of Bauer. The court found that the City did not have ownership of the park because the parkland had been "reserved" to the State of Nebraska rather than "dedicated" to

the City. The court, therefore, found that the City had no authority to enter into the agreement, whereupon this appeal was instituted.

## ASSIGNMENTS OF ERROR

The appellants assert, in summary, that the district court erred in (1) finding that the State of Nebraska holds title to Cooper Park and that the City does not and (2) finding that Bauer had standing to maintain the action by proving the requisite elements of a resident taxpayer action.

## SCOPE OF REVIEW

An action for an injunction sounds in equity. *City of Newman Grove v. Primrose*, 240 Neb. 70, 480 N.W.2d 408 (1992). In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See, *Eliker v. Chief Indus., ante* p. 275, 498 N.W.2d 564 (1993); *Helvey v. Dawson Cty. Bd. of Equal.*, 242 Neb. 379, 495 N.W.2d 261 (1993).

## APPEALABILITY OF ORDER

Preliminarily, we address Bauer's claim that this appeal is not properly before this court. Bauer's claim overlooks the fact that the trial court found title to the park in the City, denied Bauer injunctive relief, and dismissed her petition. This was a final judgment in the case. Thereafter, the trial court granted Bauer a new trial, found that the City had no title in the parkland, and vacated the prior judgment. The trial court then retained jurisdiction "for the purpose of making a final determination of relief consistent with the request of [Bauer's] petition, the applicable law and evidence to be submitted upon further hearing."

The defendants have appealed the trial court's vacation of the final judgment in favor of the defendants and the trial court's granting of Bauer's motion for a new trial. Neb. Rev.

Stat. § 25-1315.03 (Reissue 1989) provides in part that "[a]n order entering judgment, as provided in section 25-1315.02, or granting or denying a new trial, is an appealable order." See, also, *Morford v. Lipsey Meat Co., Inc.*, 179 Neb. 420, 138 N.W.2d 653 (1965) (holding that an order granting a new trial in a civil action is appealable). Hence, the district court's order of March 18, 1991, granting Bauer a new trial is an appealable order, and her argument that it is not is without merit.

## OWNERSHIP OF COOPER PARK

We now turn to the issue of ownership of Cooper Park. All of the land involved in this litigation was acquired by the State of Nebraska through a warranty deed from John Giles on August 2, 1867. Bauer contends that Cooper Park was "reserved" to the State of Nebraska, while the appellants argue that the park was "dedicated" to the City.

This court has held that "[a] reservation is some new thing issuing out of what is granted. It creates a new right in the grantor from the subject of the conveyance, something which did not exist as an independent right before the grant and which is originated by it." *Elrod v. Heirs, Devisees, etc.*, 156 Neb. 269, 272, 55 N.W.2d 673, 675 (1952). Accord *Kozak v. State*, 189 Neb. 525, 203 N.W.2d 516 (1973), *overruled on other grounds, Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982). On the other hand, "[a] 'dedication' of real estate has been defined as a landowner's giving of a right or easement for public use." *Western Fertilizer v. BRG*, 228 Neb. 776, 782, 424 N.W.2d 588, 593 (1988).

To determine the status of Cooper Park, it is necessary to review the history of the park and the legislation which created the City. Shortly after Nebraska achieved statehood in 1867, the Legislature enacted the Seat of Government Act, 1867 Gen. Laws, pp. 858-62 (codified at Gen. Stat. ch. 72, §§ 1-16 (1873)). The act appointed three commissioners to select a site for the seat of government and sites for public buildings of the State of Nebraska and directed the commissioners to "immediately survey, lay off and stake out the said tract of land into lots, blocks, streets and alleys and public squares or *reservations for public buildings*, which said town, when so laid out and

surveyed, shall be named and known as Lincoln." (Emphasis supplied.) 1867 Gen. Laws, § 3, p. 859. The act further provided that plats be made "showing the blocks, lots, streets, alleys, *parks*, squares and *reservations for public buildings*, one of which [plats] shall be recorded in the office of the county clerk." (Emphasis supplied.) 1867 Gen. Laws, § 4, p. 859.

Acting upon the Legislature's mandate, the three commissioners personally visited several proposed sites for the state capital. On August 14, 1867, the commissioners reported to the Legislature that they had selected a site and had that day formally announced the founding of the town of "Lincoln" as the seat of government of Nebraska. See Report of Commissioners to Locate the Seat of Government of the State of Nebraska (1869). A surveyor had already been hired, and a plat of the area was completed. In their official proclamation, the commissioners stated that they had "designated within said location, the reservation for the Capitol Building, State University and Agricultural College. Parks and other reservations contemplated in the aforesaid act . . . will be properly designated upon a plat and file [sic] in the office of the Secretary of State." Report of Commissioners at 6.

The commissioners elaborated on the reservations made, stating that "[r]*eservations of nearly 12 acres each* were made for the State House, State University and *a City Park*, these being at about equal distances from each other." (Emphasis supplied.) *Id.* at 7. Other reservations were also listed, and the commissioners requested that the Legislature confirm the commissioners' action "in respect to all of the reservations." *Id.* at 8.

On February 15, 1869, the Legislature responded with a joint resolution which stated in relevant part:

> [T]he report of the Commissioners for the location of Lincoln, the seat of government of Nebraska, and for the erection of public buildings thereat, is hereby accepted, and *all reservations of public squares, streets and alleys, and church lots in Lincoln, together with the general design, is* [sic] *hereby adopted* . . . .

(Emphasis supplied.) Joint Resolution, 1869 Neb. Laws, p. 316 (Feb. 15, 1869).

Bauer argues that the Legislature intended that certain areas of the City, including the park in question, be reserved to the State of Nebraska. We disagree. The Seat of Government Act, by placing "reservations for public buildings" last in a series of areas to be platted, plainly authorized the commissioners to reserve land only for public buildings. 1867 Gen. Laws, §§ 3 and 4, p. 859. That streets, alleys, squares, and parks were not reserved in the Seat of Government Act is consistent with the fact that many such areas in municipal corporations are acquired by voluntary dedication of property to the public by the owner. See 11A Eugene McQuillin, The Law of Municipal Corporations § 33.02 (3d ed. 1991). Although the commissioners' report to the Legislature states that a reservation of nearly 12 acres was made for a "City Park," the commissioners obviously had no authority to make such a reservation, their power, under the Seat of Government Act, being limited to making reservations for public buildings.

Bauer also contends that the Legislature, by accepting the commissioners' report in the joint resolution of February 15, 1869, nonetheless adopted such reservations as mentioned in the report.

> While some constitutions provide to the contrary, the general rule is that a joint or concurrent resolution adopted by the legislature is not a statute, does not have the force or effect of law, and cannot be used for any purpose for which an exercise of legislative power is necessary.

73 Am. Jur. 2d *Statutes* § 3 at 270 (1974). Article II, § 1, of the Constitution of the State of Nebraska as it existed in 1869, required that "the style of every law shall be, '*Be it enacted by the Legislature of the State of Nebraska.*' " The joint resolution states, "*Be it Resolved by the Legislature of the State of Nebraska.*" The language of the joint resolution is therefore constitutionally deficient to be enacted as a law. The resolution could not and did not in any way amend or repeal any of the provisions of the Seat of Government Act. Thus, the State of Nebraska did not reserve the park property to itself.

Next, we examine the issue of whether the park was validly dedicated to the City. Rev. Stat. ch. 53, §§ 42 and 43 (1866),

provided:

> Sec. 42. The proprietor of any land may lay out a town, or addition to any town, and he shall cause an accurate map or plat to be made out, particularly describing the lots, streets, avenues, lanes, alleys or other grounds belonging to such town or addition. . . . [A]nd *such plat shall be acknowledged* before some court or officer authorized to take the acknowledgment of deeds or conveyances of real estate, and when such map or plat is made out and acknowledged, the same shall be filed and recorded in the office of the county clerk of the county.

> Sec. 43. Such plat and acknowledgment being so recorded, *shall be equivalent to a deed in fee simple* from the proprietor, of all streets, alleys, avenues, squares, parks and commons . . . .

(Emphasis supplied.)

On September 6, 1867, pursuant to the authority granted them by the Seat of Government Act, the three commissioners filed a plat of the City of Lincoln in the office of the county clerk. That plat shows a park designated as "Lincoln Park," now known as "Cooper Park," which is the subject of this lawsuit. Apparently, the plat was never acknowledged as required by §§ 42 and 43, giving rise to a defective statutory dedication of the public areas on the plat. See *Pillsbury v. Alexander*, 40 Neb. 242, 58 N.W. 859 (1894). However, any defects of acknowledgment were subsequently cured by Comp. Stat. ch. 14, § 115 (1881), which provided that "all plats heretofore filed for record, and not subsequently vacated, are hereby declared valid, notwithstanding irregularities and omissions in manner or form of acknowledgement." Bauer has not contended that the plat was ever vacated.

We therefore find that the plat of the City of Lincoln, duly filed with the county clerk and declared valid by § 115, is sufficient to have vested ownership of Cooper Park in the City.

## CONCLUSION

Our holding that ownership of Cooper Park is vested in the City is dispositive of this appeal. Therefore, it is not necessary for us to address whether Bauer has standing to bring this

lawsuit.

We reverse the order of the district court granting the plaintiff a new trial and remand the cause to that court with directions to reinstate its order of January 31, 1991, in favor of the defendants and to dismiss the plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.